## FRED B. CLARK v. ALBERT E. McMANUS.[1]

July 17, 1908.

Nos. 15,693—(171).

**Subscription to Stock—Failure of Consideration.**

Plaintiff paid cash for the right to have issued to him certain shares in a mining company thereafter to be organized to receive a certain option, on which the first payment only had been made, and to take over, operate, and develop the properties therein described. On an unfavorable report of mining experts, the effort to carry the venture through was abandoned when the option expired. Plaintiff sought to recover the cash paid by him. Fraud on the part of the defendant was disclaimed. It is *held* that the facts did not show a failure of consideration.

Action in the district court for St. Louis county to recover $2,000 paid to defendant. The action was tried before Cant, J., and a jury which rendered a verdict in favor of defendant. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Stearns & Hunter,* for appellant.

*H. B. Fryberger,* for respondent.

JAGGARD, J.

One Penberthy, a mining expert, having an option on what was called the "Apache mine," assigned it to the defendant and his associates, who paid the amount of the first payment on said option, to wit, $10,-500. The agreement with Penberthy contemplated that, for the purpose of taking over, operating, and developing the properties described, there should be organized a corporation "capitalized at $500,000, divided into fifty thousand shares of ten dollars each." Penberthy was to receive two thousand five hundred of these shares, of which two thousand were to be held by the company as trustee for eighteen months. Penberthy assigned two hundred fifty shares to defendant, but for no cash paid. Defendant's associates were well-known and conspicuously successful mining operators. Plaintiff, having heard that

[1] Reported in 117 N. W. 476.

"the deal was on," importuned defendant to "let him in." Defendant, reluctant to sell the stock, explained the whole venture to the plaintiff, who understood the nature of the option, the making of the first payment only, the contingency of success, the necessity for further expert examination, and the possibility of entire loss. The result of the negotiations was that plaintiff paid defendant $2,000 for stock which he supposed he was buying from Penberthy. Penberthy executed a written assignment of one hundred shares "of the stock of the certain company to be organized on the so-called Apache mine, * * * which said company is to be incorporated to take over the option given by [Penberthy] to [defendant]; * * * the said shares of stock to be taken from the quota allotted to me [Penberthy] under said option of two thousand five hundred shares, being part of the two thousand shares held in escrow. And I hereby direct the secretary of the said company, when the incorporation is complete, to deduct said one hundred shares of stock from the amount due me." Penberthy also executed a similar assignment of another one hundred shares which were "part of the five hundred shares which [was] not held in escrow." The proposed company was incorporated. Plaintiff was informed that the stock which he had bought was not in fact Penberthy's but defendant's. Thereupon the parties entered into new negotiations. It was in connection with these negotiations that the question as to rescission, which will be subsequently referred to, arose.

Plaintiff wrote a letter purporting to cover "our talk." It is admitted that this part of the letter expressed the understanding, viz.: "The parties in the Apache Development Company are desirous of all the stock thereof working together. They do not intend to issue any until some considerable work has been done. There was nothing said to you along that line when you bought your two hundred shares from the stock Penberthy assigned to me; but you say you are willing to stand in the same position in that regard as the rest of us, provided I get you five hundred shares of stock with one dollar assessment paid and two hundred shares with first assessment of not to exceed fifty cents paid, the same to be issued to me and delivered to you, or, in case only receipts are issued, then such receipts or other evidence delivered to you, said stock to take the regular course with the other stock of said company."

The part of the letter denied by defendant in no wise affected the merits of this controversy. Subsequently the mine was abandoned. The corporation held no meeting, elected no officers, and issued no shares of stock. Defendant never assigned or conveyed to the said company the said option and rights held by him as trustee. The company never had any assets of any nature. Because of the unfavorable report of an expert, one of the promoters withdrew from the venture. The effort on the part of the others to carry it through was abandoned upon the expiration of the option in January, 1907.

Plaintiff by this action sought to recover the $2,000 he had paid defendant, with interest. The case was tried before a jury. The issue of fact submitted to it concerned the rescission of the contract by plaintiff, prior to the execution of the final contract, which has been quoted at some length. The court charged the jury: "What took place then is in dispute. Plaintiff claims that at such time and place defendant offered to pay him back his money, and that he (plaintiff), having obtained information that he was buying this stock in reality from the defendant and not from Penberthy, then accepted such offer, and was desirous of receiving such repayment, and closing the matter in that way, but that he later found that defendant was unwilling to stand by such offer. That is plaintiff's claim. Defendant denies that any such thing occurred, except that on one or more occasions he offered to repurchase from plaintiff the stock in question, but that plaintiff wholly refused to make such sale, and, on the contrary, insisted on retaining the stock for which he had already contracted, and was anxious to secure additional holdings." The jury found for the defendant. In this connection it is to be borne in mind that fraud was not charged to the defendant, but was expressly disclaimed by the plaintiff.

On this appeal plaintiff contended that he did not receive the shares of stock for which he bargained and paid, nor any part thereof; that he did not accept anything in the place of the stock for which he contracted; and that he did not receive anything of value from the defendant. From these facts there necessarily resulted total failure of consideration for the money so paid. It appeared, however, from the record and pleadings in this case, that the shares of stock had never been in fact issued by the corporation. Plaintiff, therefore, insisted

further that the money paid as the purchase price of shares of stock in a proposed corporation may be recovered in an action for money had and received, if the purchaser fails to receive such stock.

It is clear from the record that this is not a fair construction of the legal effect of the testimony. Properly speaking, there never was an agreement to sell stock. No stock existed. This was fully understood by both parties. In the language of the plaintiff's own brief, "the money was paid on the theory or basis of the happening of a certain event. * * * That event did not occur. * * *" Plaintiff knew the nature and details of the speculative transaction. He knew he was buying a share in what it was hoped would be a profitable venture. He wanted a chance to make a fortune. He was given an opportunity to take the chance. He paid for the right to have stock issued to him in case the mine developed successfully. All parties treated the stock to which they would be entitled as the measure of their interest in the venture. They dealt with the rights to issuance of stock as a convenient and brief equivalent for a longer and more technical formula of legal rights under their contracts. The language with reference to the stock was used as the symbol of their interests. The plaintiff received something of value. His rights were of greater value in the market than he paid for them. He exacted the right to buy seven hundred shares more before he would consent to escrow his right to the stock.

The defendant, on the other hand, parted with value. He gave to the plaintiff an enforceable right to stock if it should be issued. If the venture had proved a success, the plaintiff would have won. The transactions of the parties are not reasonably susceptible of construction whereby plaintiff could say: "Heads, I win; tails, you lose." He took his chances with all parties concerned. He had acquired dominion over prospective stock. It is true no stock was ever delivered. If it be conceded that, to have literally performed the contract, stock should have been issued, it is equally clear that so to have done would have been a useless formality. The option had been forfeited. The stock would have been waste paper. Plaintiff's beneficial right had ceased. Even if, in another form of action, plaintiff might have recovered nominal damage, he clearly cannot recover for moneys had and received.

Counsel for plaintiff has directed our attention to many authorities which fully sustain the position for which he contends. That position, however, we have concluded, is a mistaken one. It would therefore merely incumber the record to consider them at length.

Affirmed.